ORIGINAL

# In the United States Court of Federal Claims

No. 17-1886C
(Filed: January 17, 2018)
NOT FOR PUBLICATION

FILED
JAN 17 2018
U.S. COURT OF FEDERAL CLAIMS

************************************

ANTHONY SPENCER GREEN, SR., *

Plaintiff,

v.

THE UNITED STATES,

Defendant.

************************************

Sua Sponte Dismissal; Subject Matter Jurisdiction; RCFC 12(h)(3); Tort Claims; Breach of Contract; Implied-in-Fact Contract; RCFC 9(k); Collateral Attack of Prior Decisions; 28 U.S.C. § 1631; Pro Se Plaintiff; In Forma Pauperis

## OPINION AND ORDER

In this case, plaintiff Anthony Spencer Green, Sr., proceeding pro se, appears to allege three batteries committed against him and the breach of an implied-in-fact contract by the federal government based on the insertion of wireless devices into his body by the government that transmit data to various government agencies. Plaintiff seeks $1 trillion in damages and an order directing the government to remove the implanted hardware from his body. Plaintiff also filed an application to proceed in forma pauperis. As explained below, the court lacks jurisdiction to consider plaintiff's claims. Thus, without awaiting a response from defendant, the court grants plaintiff's application to proceed in forma pauperis and dismisses plaintiff's complaint.

## I. BACKGROUND

Plaintiff was born on April 27, 1978, at the Advocate Illinois Masonic Medical Center in Chicago, Illinois.[1] Compl. ¶ 4. At that time, plaintiff alleges, the United States Defense Advanced Research Projects Agency ("DARPA") inserted a "frequency chip" into his body. Id. ¶¶ 1, 4. In 1980, plaintiff underwent an operation to alleviate a left inner ear infection. Id. ¶ 4. The 1980 operation took place at what is now known as the Ann & Robert H. Lurie Children's Hospital of Chicago. Id. Plaintiff alleges that, during the 1980 operation, DARPA inserted a "wireless cochlear implant/frequency chip" into his left ear. Id. Plaintiff asserts that he has thereafter "been connected to computers and technology all his life" for the purpose of DARPA testing via the brain-computer interface technology ("BCI") that is in his body. Id.

---

[1] The court derives the facts in this section from the allegations set forth in plaintiff's complaint and facts of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

7017 1450 0000 1346 4254

In December 2011, plaintiff was taken to the Brooke Army Medical Center ("BAMC") in San Antonio, Texas for treatment following an accident involving a minivan.[2] Gamez, slip op. at 1. Plaintiff alleges that, while receiving treatment at the BAMC, a "neural prosthetic" device was inserted into his body by the United States Army. Compl. ¶ 4. Plaintiff states that the neural prosthetic device connects him to DARPA, the BAMC, the United States National Aeronautics and Space Administration ("NASA"), "other government agencies," and various "virtual reality computer gaming programs." Id. Plaintiff avows that he has never been compensated for his forced participation in DARPA's medical research. Id. Plaintiff further asserts that the "abuse" he has suffered at the hands of DARPA, the BAMC, and NASA due to the BCI present in his body has rendered him unable to work and places him at a "high chance" of contracting an unspecified disease because of the radiation emitting from the transmitters. Id. Plaintiff avows that his only source of income is Supplemental Security Income due to his inability to work, which plaintiff refers to as "SSI-disability."[3] Id.

Over the past two years, plaintiff has filed numerous federal lawsuits seeking redress for the abuse he alleges to have suffered. Although the lawsuits assert different legal theories, they all stem from the same operative facts—the insertion of hardware into plaintiff's body, the continuous monitoring of plaintiff's thoughts and actions, and the lack of compensation paid to plaintiff by the federal government for his unwilling participation in DARPA's research programs. The following case filed by plaintiff, in which he alleges the same operative facts as in the instant complaint, was dismissed as frivolous:

- Green v. NASA Dir., 1:16-cv-02387, slip op. at 2 (D.D.C. Dec. 7, 2016).

In addition, the following cases filed by plaintiff, in which he alleges the same operative facts as in the instant complaint, were dismissed for failure to state a claim upon which relief could be granted:

- Green v. Ann & Robert H. Lurie Children's Mem'l Hosp., No. 16-cv-09954 (N.D. Ill. Sept. 28, 2017) (order dismissing case);

- Green v. Def. Advanced Research Projects Agency, No. 1:17-cv-647 (E.D. Va. June 19, 2017) (order dismissing case), aff'd,

[2] In his complaint, plaintiff describes the BAMC treatment as taking place in December 2011. Compl. ¶ 4. Plaintiff has also described the treatment as having taken place in December 2012. See, e.g., Green v. Gamez ("Gamez"), No. SA-16-CV-01159, slip. op. at 1 (W.D. Tex. Nov. 28, 2017). The court uses the date referenced by plaintiff in his complaint. However, the distinction is immaterial with respect to the instant case.

[3] Supplemental security income is a benefit provided under the Social Security Act for individuals who are age 65 or older, blind, or disabled, and meet certain income and resource requirements. 42 U.S.C. §§ 1381, 1381a (2012).

699 F. App'x 175 (4th Cir. 2017) (unpublished memorandum decision); and

- Green v. Creighton/CHI Health, No. 8:16CV480, slip op. at 4 (D. Neb. Feb. 3, 2017), aff'd, No. 17-1462 (8th Cir. July 25, 2017).[4]

Finally, the following cases filed by plaintiff, in which he alleges the same operative facts as in the instant complaint, were dismissed upon both grounds—i.e., frivolous and failure to state a claim upon which relief could be granted:

- Gamez, slip op. at 6; and
- Green v. Griffin, No. 4:17-cv-02145 (S.D. Tex. July 12, 2017) (order dismissing case), appeal dismissed, No. 17-20501 (5th Cir. Sept. 29, 2017).

Plaintiff subsequently filed suit in this court on December 6, 2017.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from its burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

[4] In Green v. Creighton/CHI Health, plaintiff alleged that medical personnel at Creighton/CHI Health violated his civil rights because they "refused to perform a CT scan or MRI on [plaintiff's] leg that contains a titanium rod." Slip op. at 1. Plaintiff had alleged the titanium rod was "connected to a 'medical cloning computer program'" that caused the manifestation of various physical symptoms. Id. at 1-2.

### B. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Subject matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." United States v. Cotton, 535 U.S. 625, 630 (2002), quoted in Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015). Either party, or the court sua sponte, may challenge the court's subject matter jurisdiction at any time. Arbaugh, 546 U.S. at 506; see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases).

In determining whether subject matter jurisdiction exists, the court generally "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). However, the court has no subject matter jurisdiction over frivolous claims. Moden v. United States, 404 F.3d 1335, 1340-41 (Fed. Cir. 2005). For example, there is no subject matter jurisdiction over claims that are "so insubstantial, implausible, foreclosed by prior decisions . . . , or otherwise completely devoid of merit as not to involve a federal controversy." Id. at 1341 (internal quotation marks omitted). If the court finds that it lacks subject matter jurisdiction over a claim, Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") requires the court to dismiss that claim.

### C. The Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). Further, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012); White Mountain, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976). Instead, the substantive right must appear in another source of

law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

### D. Breach-of-Contract Claims

In contract disputes, the "money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract."[5] Holmes, 657 F.3d at 1314. Therefore, a "non-frivolous allegation of a contract with the government" is generally sufficient to invoke the court's Tucker Act jurisdiction. Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis added). The court's jurisdiction over implied contracts extends to claims involving implied-in-fact contracts, but not to claims involving implied-in-law contracts. Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996). An implied-in-fact contract results from a "meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." Id. at 424 (internal quotation marks omitted). An implied-in-law contract is a "fiction of law where a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress." Id. (internal quotation marks omitted). The requirements for an implied-in-fact contract with the government "are the same as for an express contract":

(1) mutuality of intent,

(2) consideration,

(3) an unambiguous offer and acceptance, and

(4) "actual authority" on the part of the government's representative to bind the government in contract.

Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003). The only difference between express contracts and implied-in-fact contracts is the nature of the evidence required. Id.

Even when a plaintiff properly alleges a contract with the government, the Court of Federal Claims cannot exercise its jurisdiction unless the plaintiff also satisfies the pleading requirements set forth in RCFC 9(k). See, e.g., Baha v. United States, 123 Fed. Cl. 1, 5 n.4 (2015) ("Satisfaction of RCFC 9(k) is a jurisdictional requirement."); see also Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. 760, 766 (2014) ("If a plaintiff fails to comply with RCFC 9(k) and to allege sufficient facts to show that it had a contract with the United States, the court cannot exercise jurisdiction over the claim."); Kissi v. United States, 102

---

[5] The mere existence of a contract, however, does not automatically give rise to the court's Tucker Act jurisdiction because not all contracts contemplate money damages. See Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (describing contracts that do not fall within the reach of the Tucker Act).

Fed. Cl. 31, 35 (2011) (finding no jurisdiction based on the plaintiff's failure to show an existing contract and failure to "adequately plead a contract claim under RCFC 9(k)"). RCFC 9(k) requires a party, "[i]n pleading a claim founded on a contract," to "identify the substantive provisions of the contract . . . on which the party relies."

## III. DISCUSSION

Under a liberal construction of plaintiff's pro se complaint, plaintiff has alleged three batteries—one each for the 1978, 1980, and 2011 insertions of BCI into his body without his consent. Plaintiff also attempts to allege, under a liberal construction of his complaint, breach of an implied-in-fact contract.

### A. The Court Lacks Jurisdiction Over Battery Claims

To the extent that plaintiff seeks relief in this court based on alleged tortious conduct, the Court of Federal Claims lacks jurisdiction.

The jurisdiction of this court only extends to certain claims "not sounding in tort." 28 U.S.C. § 1491(a)(1). Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680, jurisdiction over tort claims against the United States lies exclusively in federal district courts. U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013). The Court of Federal Claims is not a district court. Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 563 (2017) (distinguishing between the "Court of Federal Claims" and "federal district courts").

Claims of assault and battery are torts. See, e.g., Burman v. United States, 75 Fed. Cl. 727, 729 (2007) (listing various torts). Therefore, the only proper forum for such claims against the federal government is federal district court.

The only exception to the rule precluding the Court of Federal Claims from entertaining tort claims is for a tort claim that "stems from a breach of contract" claim. Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002). In such a case, "the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims." Id.; accord Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 745 (1980) ("Where . . . a claim is based on breach of contract it is properly within the jurisdiction of this court even though it also alleges that defendant engaged in tortious conduct in breaching the contract."). In Demodulation, Inc. v. United States, 103 Fed. Cl. 794, 813-14 (2012), this court observed that if it dismissed the counts alleging breach of contract, it would also "necessarily" dismiss the tortious claims arising out of those purported contracts. In other words, tortious breach-of-contract claims cannot survive if the underlying contractual claims are dismissed. See, e.g., Nesselrode v. United States, 127 Fed. Cl. 421, 430 (2016) (dismissing a fraud claim based on a breach of contract for lack of subject matter jurisdiction when the plaintiff failed to state a plausible breach-of-contract claim). However, the contract-based exception does not apply in the instant case. Although plaintiff's tort allegations are related to plaintiff's breach-of-contract allegations (which are discussed below), the tort allegations do not "stem from" the breach-of-

contract allegations because, unlike in Nesselrode and Demodulation, each set of allegations can be decided independently of the other.

**B. The Court Lacks Jurisdiction Over Plaintiff's Breach-of-Contract Claim**

The court construes plaintiff's allegation that the federal government has not compensated him for his participation in DARPA's research as an allegation that the federal government had an implied-in-fact contractual obligation to do so.

Although nonfrivolous breach-of-contract allegations are within this court's Tucker Act jurisdiction, plaintiff has failed to allege the necessary elements—mutuality, consideration, offer and acceptance, and actual authority—of a contract with the government. Plaintiff's repeated averments that BCI was inserted into his body against his will clearly demonstrate that there was no "meeting of the minds" or conduct from which such an agreement could be inferred.[6] Further, plaintiff has failed to satisfy the RCFC 9(k) pleading requirements because no substantive provisions of the alleged implied-in-fact contract have been identified. Therefore, even if plaintiff had sufficiently alleged the existence of a contract with the federal government, plaintiff's failure to comply with RCFC 9(k) dooms that portion of his complaint.

**C. The Court Lacks Jurisdiction to Entertain Plaintiff's Collateral Attack Against the Decisions of Other Courts**

In addition to alleging tort claims and a breach-of-contract claim, plaintiff appears to attempt a collateral attack on the decisions of various federal district and appellate courts. However, the Tucker Act does not provide the Court of Federal Claims with jurisdiction to entertain collateral attacks on decisions of other courts. 28 U.S.C. § 1491(a); see, e.g., Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court."); Vereda, Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the court to scrutinize the actions of another tribunal." (internal quotation marks omitted)).

Plaintiff's recourse concerning prior adverse decisions is "the statutorily defined appellate process." Shinnecock Indian Nation, 782 F.3d at 1353 (citing 28 U.S.C. § 1291), whether in state or federal court. This court cannot entertain collateral attacks on prior decisions of other courts.

---

[6] Plaintiff's allegations that his participation in the purported DARPA research was against his will also belie any possibility of an express contract. In addition, since the Court of Federal Claims has no jurisdiction over implied-in-law contracts, construing plaintiff's complaint in such a manner would be superfluous.

### D. The Court Declines to Transfer This Case

When the Court of Federal Claims lacks jurisdiction over a claim, it is empowered to transfer such claim to an appropriate court if doing so "is in the interest of justice." 28 U.S.C. § 1631. "Transfer is appropriate when three elements are met: (1) [t]he transferring court lacks subject matter jurisdiction; (2) the case could have been filed in the court receiving the transfer; and (3) the transfer is in the interests of justice." Brown v. United States, 74 Fed. Cl. 546, 550 (2006).

In the instant case, the first two elements are met with respect to plaintiff's battery claims because, as discussed above, (1) the Court of Federal Claims lacks jurisdiction over tort claims and (2) plaintiff's tort claims are subject to the exclusive jurisdiction of the federal district courts. However, transferring plaintiff's case to an appropriate district court will not "serve the interests of justice." Khalil v. United States, 133 Fed. Cl. 390, 393 (2017). In Khalil, another judge of this court declined to transfer the case because doing so would "serve[] no purpose" since the plaintiff's claims had already been considered by a district court. Id. In the instant case, plaintiff has similarly "already availed himself of the opportunity," id., to present his claims against the federal government to a district court. In other words, the courts that would have jurisdiction have already considered plaintiff's claims. Therefore, as in Khalil, transferring plaintiff's battery claims would be futile.

With respect to plaintiff's breach-of-contract claim, the first element is met because, as discussed above, this court lacks jurisdiction to consider plaintiff's breach-of-contract claim. However, the second element is not met. The jurisdiction of federal district courts to consider contract claims against the federal government is limited to claims "not exceeding $10,000 in amount." 28 U.S.C. § 1346(a)(2). In the instant case, plaintiff seeks damages of $1 trillion, thus exceeding the amount allowable in district court.[7] Therefore, the court cannot transfer plaintiff's breach-of-contract claim.

In sum, the court declines to transfer any part of plaintiff's case to another court.

---

[7] The failure of the second element also results in a failure of the third element; since a district court would not have jurisdiction over plaintiff's breach-of-contract claim, transferring that claim would not serve the interests of justice.

## IV. PLAINTIFF'S APPLICATION TO PROCEED IN FORMA PAUPERIS

As noted above, plaintiff filed, concurrent with the complaint, an application to proceed in forma pauperis. Pursuant to 28 U.S.C. § 1915, federal courts are permitted to waive filing fees and security under certain circumstances.[8] See 28 U.S.C. § 1915(a)(1); see also Waltner v. United States, 93 Fed. Cl. 139, 141 n.2 (2010) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and non-prisoners alike). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees or give the security, and (3) states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1). Determination of ability to pay is "left to the discretion of the presiding judge, based on the information submitted by the plaintiff." Alston-Bullock v. United States, 122 Fed. Cl. 38, 45 (2015). Here, plaintiff has fulfilled all three requirements, and the court is satisfied that plaintiff is unable to pay the filing fee otherwise required by RCFC 77.1(c). Therefore, the court grants plaintiff's application and waives his filing fee.

## V. CONCLUSION

The Court of Federal Claims lacks jurisdiction over claims involving battery. The court also lacks jurisdiction over plaintiff's breach-of-contract claim because plaintiff has failed to sufficiently allege the breach of an implied contract. In any event, plaintiff has failed to comply with the pleading requirements of RCFC 9(k). Further, the court lacks jurisdiction to entertain collateral attacks on the decisions of other courts. Transferring plaintiff's case to a district court is not in the interests of justice because the appropriate district courts (1) have already considered plaintiff's battery claims against the federal government and rejected them, and (2) cannot exercise jurisdiction over plaintiff's breach-of-contract claim.

Accordingly, plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Plaintiff's application to proceed in forma pauperis is **GRANTED**. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Margaret M. Sweeney

MARGARET M. SWEENEY
Judge

---

[8] While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of Title 28 of the United States Code, the court has jurisdiction to grant or deny applications to proceed in forma pauperis. See 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be a "court of the United States" for purposes of 28 U.S.C. § 1915).